# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **STANFORD BARTON,**        ) | |
|        ) | |
|       **Plaintiff,**        ) | |
|        ) | **CIVIL ACTION** |
| **v.**        ) | |
|        ) | **No. 15-1272-JWL** |
| **CAROLYN W. COLVIN,**        ) | |
| **Acting Commissioner of Social Security,**        ) | |
|        ) | |
|       **Defendant.**        ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).  Finding the Administrative Law Judge (ALJ) did not adequately explain his evaluation of the medical opinions or resolve the ambiguities therein, the court ORDERS that the decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this decision.

## I.      Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning April 12, 2013. (R. 12, 203, 210[1]). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. Plaintiff argues that the evidence does not support the ALJ's residual functional capacity (RFC) assessment because the ALJ accorded significant weight to Dr. Sheehan's medical opinion but did not specifically discount any of the opinion or explain how he had resolved the ambiguity created by Dr. Sheehan's opinions that Plaintiff possibly could concentrate and persist on simple tasks if his pain were better controlled and that at least on the date of her examination Plaintiff did not have the capacity to perform simple work.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable

---

[1]Plaintiff's "Application Summary for Supplemental Security Income" alleges his "disability began on March 12, 2013." (R. 210) (emphasis added). Plaintiff has not alleged error in this regard, so the court will address it no more. If Plaintiff believes his disability began on March 12, 2013, he can make any arguments in that regard to the Commissioner on remand.

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ did not adequately explain his evaluation of the medical opinions or resolve the ambiguities therein.  In the "Conclusion" of his Brief, Plaintiff asks the court to "issue an order . . . [d]irecting the Commissioner to pay [Social Security Disability Income] Benefits."  (Pl. Br. 17).[2] Plaintiff cited no authority for the court to direct the payment of Social Security benefits,

---

[2]Plaintiff did not number the pages of his briefs, so the court uses the numbers provided by the software it used to open the portable document file (.pdf) documents filed in the court's Case Management/Electronic Case Filing (CM/ECF) system.

provided no legal standard to apply in such a case, and made no argument explaining why such a result should be reached in this case.  Plaintiff has waived consideration of this issue by failing to develop any argument with regard to it.  Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).  And, the court will ignore Plaintiff's implicit invitation to wade into such an issue sua sponte.

## II.    Discussion

Plaintiff argues that "the ALJ failed to account for Dr. Sheehan's opinion that that [sic] [Mr.] Barton could perform simple work only if his pain was better controlled."  (Pl. Br. 13).  He argues that Dr. Voran's opinion that Plaintiff has "multiple somatic complaints and overlapping problems that each, in their own way are not serious, but in combination and overall are quite debilitating," is evidence regarding physical limitations from Plaintiff's treating physician which complements and supports Dr. Sheehan's opinion regarding mental limitations.  Id. at 14 (quoting R. 687) (brackets omitted).  He points to evidence that in his view supports a finding of disability.  Id. at 14-15.  Finally, he argues that the ALJ accorded significant weight to Dr. Sheehan's opinion, but that the RFC he assessed is inconsistent with Dr. Sheehan's opinion that Plaintiff cannot perform simple work, and such inconsistency requires the ALJ to explain why he did not adopt the

portions of Dr. Sheehan's opinion that conflict with the RFC.  Id. at 16-17.  He argues that remand is necessary for the ALJ to adopt all of Dr. Sheehan's opinions or explain why he did not do so.  Id. at 17.

The Commissioner argues that the ALJ reasonably determined that Plaintiff can perform simple work, and reasonably evaluated the medical opinions.  She summarizes the medical opinions of Dr. Mintz, the psychologist who examined Plaintiff and prepared a report at the request of the state agency; Dr. Blum, the state agency consultant psychologist who reviewed the record and provided an opinion regarding Plaintiff's mental capabilities; and Dr. Sheehan, the psychologist who examined Plaintiff after the disability hearing and prepared a report of that examination at the request of the ALJ, and answered follow-up interrogatories propounded by the ALJ.  (Comm'r Br. 5-6).  She notes that the ALJ accorded "significant weight" to each of these opinions.  Id. at 7 (citing R. 28, 33, 35, 37).  She argues that each of these opinions "were consistent with the record as a whole and largely consistent with each other, [but] there were slight differences amongst them."  Id. at 7-8.  She argues that the "ALJ reasonably exercised the discretion accorded to him to reconcile those differences by assessing an RFC that was an amalgamation of the opinions."  Id. at 8.  She argues that the ALJ's assessment of a "limitation to 'simple' work with two hour periods of concentration was clearly a blending of the [three psychologists'] opinions regarding the complexity of work and concentration levels of which Plaintiff was capable, rather than an outright rejection of Dr. Sheehan's opinion."  Id.  She implies that Plaintiff did not object to this "blending" of

6

opinions because he did not challenge the weight accorded to Dr. Mintz's and Dr. Blum's opinions, and argues that it is inconsistent for Plaintiff to insist on a limitation to less than simple work because such a limitation would ignore those opinions to which the ALJ also accorded significant weight.  (Comm'r Br. 9).  She then explains how in her view the record evidence supports the RFC assessed by the ALJ.  Id. at 9-11.

**A.**      **The ALJ's Findings**

The ALJ recognized Dr. Voran's November 2013 opinion that Plaintiff "had multiple somatic complaints and overlapping problems that each in their own way were not serious, but in combination and overall were quite debilitating."  (R. 24) (citing Ex. 11F, p.10 (R. 687)).  He accorded little weight to this opinion because the question of disability or ability to work is an administrative issue reserved to the Commissioner and because the duration requirement "was not met at that time."  (R. 25).  He also recognized Dr. Voran's opinion in February 2014 that Plaintiff is "practically disabled due to the constellation of problems in total and not due to any one of them with a strong mental component."  (R. 26) (quoting R. 804, and citing Ex. 21F, pp.23-29 (R. 798-804)).  Once again, he accorded this opinion little weight because it is on an issue reserved to the Commissioner.  Id.  The ALJ later noted that Dr. Voran had also provided opinions in medical source statements, and he explained that he accorded little weight to those opinions because they are not consistent with Dr. Voran's treatment notes or with the other medical evidence, because the medical source statements submitted in November 2013 and February 2014, were prior to Plaintiff's two successful spinal surgeries, and

7

because they were inconsistent with the physical examination completed after the

disability hearing.  (R. 36).

The ALJ summarized Dr. Mintz's examination report, and noted that Dr. Mintz

assigned a Global Assessment of Functioning (GAF) score of 59 and opined that Plaintiff

> appeared capable of working from a psychological point of view.  His
> overall psychological functioning would be improved if he were fully
> abstinent from alcohol.  He appeared able to understand simple and
> intermediate instructions.  His concentration capacity appeared intact.  He
> appeared able to relate adequately to co-workers and supervisors.  He did
> not appear capable of handling his own funds due to alcohol and drug abuse
> type symptoms.

(R. 28).  He accorded significant weight to Dr. Mintz's GAF score and to his opinions

regarding functional limitations "because they are supported by his own thorough mental

status examination and clinical interview of the claimant, and by the medical records in

evidence."  Id.

The ALJ noted that he had ordered a psychological examination after the disability

hearing, and that Dr. Sheehan performed that examination.  (R. 31).  He summarized Dr.

Sheehan's report of that examination (R. 31-33), and noted her opinion that Plaintiff

> was able to understand and remember simple to moderately complex
> instructions, but he was fairly distracted during the examination.  If his pain
> were better controlled he possibly could concentrate and persist on simple
> tasks during a normal workday in a competitive environment.  His capacity
> to interact appropriately with the general public and adapt to the
> environment was fairly limited by his low and irritable mood.  He would do
> best in a low-stress work environment.

(R. 33).  The ALJ stated that he accorded significant weight to Dr. Sheehan's opinions

"because they are supported by her own thorough mental status examination and clinical

interview of the claimant, and by the medical records in evidence," and because they are consistent with Dr. Mintz's opinions.   Id.   In light of Dr. Sheehan's report, the ALJ propounded two interrogatories as a follow-up to Dr. Sheehan:

1.      Dr. Sheehan, your conclusion suggested Mr. Barton would have a limited capacity to interact with others due to his low and irritable mood.  However, you failed to quantify the degree to which Mr. Barton would be limited.  Therefore, do you believe Mr. Barton would be able to take criticism and direction from a supervisor on a consistent basis secondary to his irritability?

2.      Furthermore, you noted that Mr. Barton was distracted during your examination.  Therefore, do you believe Mr. Barton's psychological symptoms would cause him to be off task during a workday?  If yes, what percentage of the day do you believe he will be off task?

(R. 34).  The ALJ quoted Dr. Sheehan's responses to the interrogatories in his decision:

1.      First, from a psychological standpoint one cannot separate impairment resulting from irritability and chronic pain when the two problems co-exist.  In this case, what has exacerbated and contributed to the claimant's irritable mood is on-going pain, which is dynamic and subject to change from hour-to-hour and day-to-day, depending on a variety of factors such as overall health, mobility, temperature, the weather, environmental stress, and personality features.  If the claimant's pain could be better controlled, one would expect his irritable mood symptoms to ease.  Second, on the day that I visited with the claimant he was quite irritable and appeared to be in significant pain.  I do not believe that on that day he would have been able to accept criticism and direction on a day-to-day basis.  Beyond this, it is impossible for me to "quantify the degree to which Mr. Barton would be limited" solely due to irritability.

2.      On the day that I visited with the claimant he appeared to be fairly distracted by his pain level and it can be concluded that on that day he would have had difficulty focusing on moderately complex and complex tasks.  If his pain were better controlled he possibly could have been able to concentrate and persist on simple tasks.  Beyond this, it is not possible to be more specific about the "percentage of

the day" he might be "off task" due to psychological symptoms.
Typical workdays usually involve a variety of simple, repetitive,
moderately complex and complex tasks, and the number of such
tasks also varies from day to day.  Further, as my answer to the
above question indicates, the claimant's psychological difficulties
are directly affected by chronic pain, and the impact of pain cannot
be separated from psychological symptoms.

(R. 34).  The ALJ stated he gave significant weight to Dr. Seehan's answers to the

interrogatories for the same reasons he accorded significant weight to her earlier opinions.

Id. at 35.

Finally, the ALJ noted Dr. Blum's opinion that Plaintiff is capable of carrying out

intermediate instructions and is limited in the abilities to interact with the general public

or to get along with coworkers or peers, and would work best in a setting that did not

require close coordination with others or work with the general public.  (R. 37).   He

accorded significant weight to Dr. Blum's opinions because they are supported by

medical evidence and are not contradicted by other medical opinions.  Id.

**B.    Analysis**

As Plaintiff argues, Dr. Sheehan indicated Plaintiff "possibly" could concentrate

and persist on simple tasks "[i]f his pain were better controlled."  (R. 840) (emphasis

added).  Moreover, in her answers to the ALJ's interrogatories, she clarified that

limitations resulting from irritability and chronic pain cannot be separated, and that on the

day she examined Plaintiff she was of the opinion that he was unable to accept criticism

or supervision.  (R. 856).  In her answers to the interrogatories, she reiterated, "If his pain

were better controlled he possibly could have been able to concentrate and persist on

10

simple tasks."  Id.  And, as Plaintiff also points out, the ALJ accorded Dr. Sheehan's

opinions significant weight.  (R. 33, 35).  The ALJ found that Plaintiff can do simple

work and maintain attention and concentration for two hour periods.  (R. 16-17).  But, he

did not find that Plaintiff's pain was, or could be, better controlled than it was on the day

of Dr. Sheehan's examination (which was after the two successful spinal surgeries), and

he did not explain how he had decided that such better control allowed Plaintiff in fact (as

opposed to the possibility) to maintain concentration and persistence on simple tasks.

    While it is the ALJ's responsibility to assess RFC and to resolve differences in the

evidence including the medical opinions, that responsibility is not carte blanche.  As

Plaintiff suggests, the ALJ is required to explain how any ambiguities and material

inconsistencies in the evidence were considered and resolved, and if the ALJ's RFC

assessment conflicts with a medical source opinion, the ALJ must explain why he did not

adopt the opinion.  Social Security Ruling (SSR) 96-8p, West's Soc. Sec. Reporting

Serv., Rulings 149-50 (Supp. 2016).  Here, the ALJ did not even acknowledge an

ambiguity or a conflict between Dr. Sheehan's opinion and the RFC assessed.  Rather, he

stated, "There is nothing in the record to show that the claimant cannot perform work

within the limitations set forth" in the RFC assessed.  (R. 37) (emphasis added).

    The Commissioner does not deny conflict, or even ambiguity.  Rather, she argues

that Dr. Sheehan's opinion was largely consistent with Dr. Mintz's and Dr. Blum's

opinions with only slight differences, and that the "ALJ reasonably exercised the

discretion accorded to him to reconcile those differences by assessing an RFC that was an

amalgamation of the opinions." (Comm'r Br. 8). She argues that the ALJ's assessment of a "limitation to 'simple' work with two hour periods of concentration was clearly a blending of the [three psychologists'] opinions regarding the complexity of work and concentration levels of which Plaintiff was capable, rather than an outright rejection of Dr. Sheehan's opinion." Id. While the court agrees with the Commissioner that an ALJ need not cite a record medical opinion for each RFC limitation assessed, and that he has the authority to "amalgamate" or "blend" opinions in order to assess an RFC supported by the record evidence, it nonetheless recognizes that an ALJ must explain his RFC assessment and support it with record evidence. And he must explain his resolution of ambiguities, and explain why he did not adopt a medical source opinion which is contrary to his assessment. To allow less would be to allow the ALJ merely to state a decision, and to allow the Commissioner to provide a post hoc rationalization of that decision if it is challenged on appeal. Courts have long prohibited such a process. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985). An ALJ's decision must be evaluated based solely on the reasons stated in the decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing Burlington Truck Lines, Inc.v. United States, 371 U.S. 156, 168-69 (1962)); see also, S.E.C. v. Chenery Corp. 332 U.S. 194, 196 (1947) ("a reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency."). Here, the ALJ did not do so. That the Commissioner now suggests other bases to affirm that decision is irrelevant to the court's review. Remand is necessary for the Commissioner to evaluate

Dr. Sheehan's opinion properly, to resolve the ambiguities, and to explain why she adopted an RFC which is contrary to Dr. Sheehan's opinion.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 20th  day of September 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum                              
**John W. Lungstrum**
**United States District Judge**